## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOUBNA SALAGH MASSEY,      ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | |
| v.        ) | Civil Action No. 12-1383 (RJL) |
|        ) | |
| REX W. TILLERSON,[1]     ) | **FILED** |
|        ) | MAR 3 1 2017 |
|     Defendant.     ) | Clerk, U.S. District and Bankruptcy Courts |

### MEMORANDUM OPINION
(March 31st, 2017) [Dkt. # 64]

Loubna Salagh Massey ("plaintiff" or "Massey") brings this civil action against the Secretary of State ("defendant"). Massey, who was employed as an Arabic Language and Culture Instructor and Developer at the Department of State's Foreign Service Institute ("FSI"), alleges that the defendant, through the actions of her supervisors at the FSI, subjected her to a hostile work environment, discriminated against her on the basis of her religion and national origin, and retaliated against her for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e. Currently before the Court is defendant's Motion for Summary Judgment [Dkt. # 64]. Upon consideration of the pleadings, the entire record in this case, and relevant law, the Court GRANTS summary judgment in favor of defendant.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes Secretary of State Rex. W. Tillerson for former Secretary of State John F. Kerry.

## BACKGROUND

Plaintiff Loubna Massey was born and raised in Morocco, but moved to the United States in 2003. Def.'s Statement of Facts ("SOF") ¶ 1 [Dkt. # 64-1]; Pl.'s Statement of Facts ("SOF") ¶ 1 [67-1]; Massey Dep. at 13:11-16 [Dkt. # 67-3]. Massey was born into a Muslim family, but converted to Christianity in 2004. Def.'s SOF ¶¶ 1, 6; Pl.'s SOF ¶ 4; Massey Dep. at 10:8–12.

In 2008, Massey began work as a contract Arabic Language and Culture Instructor at the State Department's Foreign Service Institute. Def.'s SOF ¶ 9; Pl.'s SOF ¶ 5; Massey Dep. at 17:24-25. During that time, Dr. James Bernhardt ("Bernhardt") was the division director of the Near East, Central, and South Asian Languages division. As a result, he oversaw FSI's Arabic Section and was Massey's second-line supervisor. Def.'s SOF 10; Pl.'s SOF ¶ 7; Bernhardt Dep. at 10:16–11:5. During her tenure at FSI, Massey was directly supervised by Dr. Tagelsir Elrayah ("Elrayah"), a Language Training Supervisor in the Arabic Section. Def.'s SOF ¶ 12; Pl.'s SOF ¶ 10; Elrayah Dep. at 12:3–12:15; 18:14–20 [Dkt. # 64-3]. Beginning in March 2010, Massey was also directly supervised by Maha Bohsali, another FSI Language Training Supervisor. Bohsali Dep. at 11:5–8; 17:11–18:10 [Dkt. # 67-3].

As an FSI Arabic instructor, Massey was assigned "a tour of duty," or schedule that she was expected to adhere to. FSI Instructors' Guide at 2137 ("No matter which tour of duty you work, you are expected to be present for the entire period. . . .") [Dkt. # 64-4]. Massey's tour of duty was from 8:45 AM to 5:30 PM. Massey Dep. at 36:5–14. During the period at issue, language instructors were required to physically sign in and out and

record their arrival and departure times. Bernhardt Dep. at 59:19–60:19. In September 2010, Mohamed Sheriff, an FSI assistant, told Bohsali that Massey arrived to work late and recorded an incorrect time on her sign-in sheet. Bohsali Dep. at 76:4–16. Bohsali consulted with Elrayah and Bernhardt, and they decided draw a line on the sign-in sheet at 9:00 AM on September 10, so that they would know if anyone signed in after 9:00 AM. Bohsali Dep. at 77:8-14 [Dkt. 65-4]. On that day, Massey signed in below the line. 09/10/10 Sign-In Sheet [Dkt. # 64-5]. As a result, Bohsali asked the IT department to determine when she signed in to her computer, and learned that Massey did not log in until 10:06 AM. Bohsali Dep. at 78:20–79:1. Bohsali also discovered that the sign-in times listed on Massey's invoices did not match her arrival times on her sign-in sheets. *See, e.g.*, 07/07/10 Sign-In Time (9:00 AM) and Invoice (8:45 AM); 07/16/10 Sign-In Time (9:00 AM) and Invoice (8:45 AM) and Invoice (8:45 AM); 07/21/10 Sign-In Time (8:56 AM) and Invoice (8:45 AM) [Dkt. # 64-5].

When presented with this information and a request to terminate her contract, Steve Rogers, FSI's Director of Acquisitions and Contracting Officer, confronted Massey about the issues regarding the sign-in sheets and invoices and terminated her contract. Rogers Decl. ¶¶ 10–13 [Dkt. # 64-9]. Massey received a termination letter that offered two reasons for her termination: "falsifying [her] timesheet[s] [and] invoice submission[s]" and "not adhering to her set work schedule." 09/14/10 Termination Letter [Dkt. # 67-5].

During this same period, Massey applied for two[2] direct-hire positions at the FSI, but was not selected for either position. In August 2010, Massey applied for a direct hire position as an Arabic Instructor at a GG-11 level. VA 418 Job Posting [Dkt. # 64-6]. Massey was included on the certificate of eligible candidates for the position. VA 418 Certificate of Eligibles [Dkt. # 64-6]. However, Dr. Bernhardt, with recommendations from Elrayah and Bohsali, decided to hire six other candidates for the position. Bernhardt Dep. at 16:2–19:10; 25:2–13, 29:1–33:17; 32:9–33:7. In December 2010, Massey applied for another direct-hire position as a Supervisory Language Training Specialist at a GG-13 level. VA 015 Job Posting [Dkt. # 64-7]. Massey was invited to interview for the position, but she ultimately declined to attend her interview and was not selected. 12/10/10 Email to L. Massey [Dkt. 64-7]; 12/16/10 Email to Bernhardt [Dkt. # 64-7].

In July 2009, prior to the events in this case, Massey provided an affidavit in connection with the investigation of an EEO complaint brought against Elrayah by another instructor, in which she stated that another employee told her about misconduct by Elrayah, but that she had not personally witnessed any wrongdoing. *See* Massey *Bashrawi* EEO Decl. [Dkt. # 64-8].

Massey filed this action in 2012, alleging that the State Department, acting through her supervisors at FSI, discriminated against her on the basis of her religion and national

---

[2] Massey applied for a third position in August 2010 as a CG-13 Language Training Supervisor, but was not ultimately selected. Although she initially claimed that this non-selection was the result of discrimination and retaliation, she no longer contests her non-selection for this vacancy because the position was offered to a "well-qualified candidate." Pl.'s Opp'n to Mot. for Summ. J. at 17–18 [Dkt. # 68]. Thus her application for the third position is now irrelevant.

origin, retaliated against her for testifying in an EEO investigation, and subjected her to a hostile work place environment.

## STANDARD OF REVIEW

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of showing that there is no dispute of fact, but the non-moving party "may not rest upon mere allegations or denials of his pleading, but must [instead] set forth specific facts showing that there is a genuine issue for trial. *Id.* at 256.

When ruling on a motion for summary judgment, the court does not make credibility determinations or weigh the evidence, as that is properly the province of the factfinder at trial. *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). Instead, the Court must accept as true the evidence of the non-moving party, and draw "all justifiable inferences" in favor of that party. *Anderson*, 477 U.S. at 255. However, to the extent that the non-moving party will bear the burden of proving facts at trial, those facts must be supported by competent evidence, and the absence of that evidence forms the basis for summary judgment. *See Celotex*, 477 U.S. at 322–24. The non-moving party must establish more than "the existence of a scintilla of evidence" in support of its position, *Anderson*, 477 U.S. at 252, and the Court will not accept "conclusory allegations lacking any factual basis in

the record." *Dist. Intown Props. Ltd. P'ship v. District. of Columbia*, 198 F.3d 874, 878

(D.C. Cir. 1999). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. Thus, the Court must

decide "whether a fair-minded jury could return a verdict for the plaintiff on the evidence

presented." *Hunter-Boykin v. George Washington Univ.*, 132 F.3d 77, 79 (D.C. Cir. 1998)

(quoting *Anderson,* 477 U.S. at 252).

## ANALYSIS

### I.    Legal Standard

Massey brings discrimination, retaliation, and hostile workplace claims under Title

VII.  With respect to discrimination, Title VII makes it unlawful for an employer "to fail

or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual . . . because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2.   For retaliation claims, Title VII prohibits employers from

discriminating "against any individual . . . because [she] has opposed any practice made an

unlawful employment practice by [Title VII], or because [she] has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under

this subchapter." *Id.* § 42 U.S.C. § 2000e-3.

Discrimination and retaliation claims are subject to the three-step framework set by

the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

Under this burden-shifting framework, the plaintiff must first establish a prima facie case

of discriminatory/retaliatory conduct.   For discrimination claims, a plaintiff must show

"she is part of a protected class under Title VII, she suffered a cognizable adverse

6

employment action, and the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). For retaliation claims, the plaintiff must establish that "she engaged in activity protected by Title VII, the employer took adverse action against her, and the employer took that action because of the employee's protected conduct." *Id.* at 1091–92.

Once a plaintiff establishes a prima facie case, the employer must provide a legitimate non-discriminatory or non-retaliatory reason for its adverse action or the employee is entitled to judgment. *McDonnell-Douglas*, 411 U.S. at 802; *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015). However, once the employer provides evidence of a non-discriminatory/non-retaliatory reason for the challenged action, then the burden-shifting framework disappears and the court's inquiry narrows. *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 493 (D.C. Cir. 2008); *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). At this stage, the only relevant inquiry is whether the employee has put forth sufficient evidence for a reasonable jury to find that the employer's proffered explanation is a mere pretext and the employer intentionally discriminated or retaliated against the employee. *Brady*, 520 F.3d at 287; *Allen v. Johnson*, 795 F.3d at 39. Furthermore, in the context of a retaliation claim, the plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

Massey also brings a claim that the defendant, through her FSI supervisors, subjected her to a hostile workplace environment in violation of Title VII. She alleges that her supervisors subjected her to severe and pervasive harassment because of her North

African origin, her agnostic and/or Christian religion, and her "complaints about discrimination at FSI." Am. Compl. ¶ 96–97. As result, she appears to be claiming that she was subject to a discriminatory *and* retaliatory hostile work environment. Our Circuit has held that a hostile work environment can amount to retaliation or discrimination under Title VII. *Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011); *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). To prevail on a hostile work place claim, plaintiff must show that the employer subjected her to "discriminatory [or retaliatory] intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

## II. Defendant Is Entitled to Summary Judgment on the Discrimination and Retaliation Claims Related to Massey's September 2010 Contract Termination.

Massey was terminated as a contract Arabic Instructor on September 14, 2010, and alleges that she was terminated as a result of religious discrimination, national origin discrimination, and in retaliation for offering testimony in a co-worker's EEOC case against Elrayah. Am. Compl., Cts. I, II, and III. However, defendant has offered a legitimate, non-discriminatory reason for her termination—namely, that she repeatedly failed to adhere to her set work schedule and falsified her time sheets to report incorrect times when she was at work. In response, Massey fails to present sufficient evidence that would permit a reasonable jury to conclude that her termination was the result of either discrimination or retaliation, and thus, defendants are entitled to summary judgment on the claims related to her September 2010 termination.

8

1.   **Defendant Has Offered Legitimate, Nondiscriminatory Reason for Massey's Termination.**

When defendant decided to terminate Massey, it offered two reasons for her termination: "falsifying [her] timesheet[s] [and] invoice submission[s]" and "not adhering to her set work schedule." 09/14/10 Termination Letter. Defendant has amassed considerable evidence showing that Massey was in fact not complying with her set work schedule, and was filling out timesheets and invoices that did not reconcile with one another.

During her employment at FSI, Massey herself recognizes that she was expected to work from 8:45AM to 5:30 PM. Massey Dep. at 167:23–169:45. However, the staff sign-in sheets show that she arrived late—between 8:56 AM and 9:10 AM—at least five times between July and September 2010. *See* 07/07/10 Sign-In Sheet; 07/16/10 Sign-In Sheet; 07/21/10 Sign-In Sheet; 08/20/10 Sign-In Sheet; 09/10/10 Sign-In Sheet [Dkt. # 67-4]. Furthermore, several of Massey's co-workers testified that she often arrived to work late. *See, e.g.*, Zuhour Alsomali Dep. at 63:20–64:4 ("[Loubna] never on time. Sometimes the students will be in class and Loubna still isn't in the building. . . . She was late many times.") [Dkt. # 64-9]; Najat Cherradi Dep. at 38:10–39:2 (testifying that Massey was coming to work late and came in a side entrance to avoid being noticed) [Dkt. # 64-6]. In fact, Massey herself repeatedly testified that she arrived after 8:45 AM and left after 5:30 PM. Massey Dep. at 158:6–13, 161:13–162:5, 169:16–25, 173:1–11; 176:10–16; 181:9–182:12.

Furthermore, the record shows that she was recording times on her invoices that were different from the times she noted on the entrance sign-in sheet. *See, e.g.,* 07/07/10 Sign-In Time (9:00 AM) and Invoice (8:45 AM); 07/16/10 Sign-In Time (9:00 AM) and Invoice (8:45 AM) and Invoice (8:45 AM); 07/21/10 Sign-In Time (8:56 AM) and Invoice (8:45 AM) [Dkt. # 64-5]. Although Massey makes much of the fact that Bohsali has since testified upon reviewing the sign-in sheets at issue that Massey worked roughly eight hours a day on the days at issue, Bohsali Dep. at 125:9–140:20, it remains undisputed that Massey submitted invoices that did not accurately state the times when she arrived and left FSI.

It is well-established in this District that an employee's failure to comply with her employer's schedule is a legitimate reason to terminate the employee. *See, e.g., Wright v. Waste Mgmt of Maryland, Inc.,* 77 F. Supp. 3d 218, 223 (D.D.C. 2015) (holding that plaintiff's excessive tardiness was a legitimate reason to terminate); *Clarke v. Washington Metro. Area Transit Auth.,* 904 F. Supp. 2d 11, 16 (D.D.C. 2012) (holding that excessive tardiness was a legitimate reason to terminate).

### 2.   No Jury Could Reasonably Conclude that Her Termination Was Actually the Result of Religious Discrimination.

Massey alleges that her supervisors at FSI—Bernhardt, Bohsali, and Elrayah—discriminated against her because she was not a practicing Muslim. Am. Compl. ¶ 24. As a threshold matter, Massey has presented some evidence that would permit a jury to infer that there was inter- and intra-religious tension amongst the FSI staff, both between conservative and moderate Muslims, and between Muslims and Christian employees. *See, e.g.,* Aiman Aziz Dep. at 26:7-27:10 (testifying that there was favoritism towards

conservative Muslims) [Dkt. # 67-3.]; Nargess Lakehal-Ayat Dep. at 23:14–24:15, 31:18–20 (testifying that outspokenly conservative Muslim employees were more likely to be preferred, and stating that conservative Muslim employees complained about others' clothes); Bernhardt Dep. at 66:17–67:3, 68:2–8 (testifying that there was conflict and tension surrounding Muslim employees praying in the workplace).

However, evidence of religious tension at the FSI is not enough to show that the reason for Massey's termination was pretextual and was actually the result of religious discrimination, because the evidence shows that her supervisors (as well as her coworkers) did not know her religion.[3] James Bernhardt and Maha Bohsali both testified that they did not know Massey's religion, and Taj Elrayah testified that he assumed she was Muslim. Bernhardt Dep. at 15:18-19 ("Q: Do you know her religion? A: I do not."); Bohsali Decl. at ¶ 6 ("I do not know Loubna's religion."); Elrayah Dep. at 20:3-8 (Q: "And do you know Ms. Massey's religion?" A: I thought Islam."). Massey's co-workers testified that they did not know her religion or assumed she was Muslim. Aiman Aziz Dep. at 11:22 ("She's Muslim."); Najat Cherradi Dep. at 23:20 ("She's Muslim."); Mangia Dambowic Dep. at 14:22 ("[She's] Muslim."). Furthermore, Massey herself testified that she kept her religious beliefs close and did not tell people what her religion was unless she knew them and they asked. Massey Dep. at 11:6, 13:1-10.

---

[3] Massey's religion is not particularly clear even at this point. In her Amended Complaint, she represents that she is "agnostic and/or Christian." She represented in March 2011 that she was agnostic. Massey Decl. ¶ 4[Dkt. # 64-8]. She now represents that she is a Mormon Christian. Massey Dep. at 10:6-14. Her actual religious affiliation is ultimately irrelevant, as she alleges that the religious discrimination stems from the fact that she was *not* a Muslim.

In response, Massey points to her own testimony alleging that Maha Bohsali made critical statements to her about being a non-practicing Muslim—telling her to learn from those who were fasting when she ate during Ramadan, chastising her for not dressing conservatively, and telling her to "pray and get back in the right path" when she complained about having to leave her office while others prayed.   Massey Decl. ¶ 40 [Dkt. # 67-5]; Massey Dep. at 45:15-18.   As courts of this District have repeatedly noted, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported by the plaintiff's own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008). *See also Fields v. Ofc. of Eddie Bernice Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2015) ("Self-serving testimony does not create genuine issues of material fact, especially where that very testimony suggests that corroborating evidence should be readily available.")   Here, Massey offers self-serving testimony that Bohsali disparaged and criticized her for being a non-practicing Muslim, which conflicts with her own testimony that she was not public about her religious beliefs, and runs contrary to the evidence that Bohsali and her co-workers did not know her religion.   These self-serving allegations, standing alone, amount to a "mere scintilla of evidence" that does not create a genuine dispute of material fact, and no jury could reasonably conclude, based on this evidence, that her termination was actually the result of her religious beliefs.

### 3.   No Jury Could Reasonably Conclude that Her Termination Was Actually the Result of National Origin Discrimination.

Similarly, Massey fails to provide sufficient evidence for a jury to reasonably conclude that she was terminated because of her North African/Moroccan origin.

As an initial matter, Massey alleges that the Arabic Section was rife with tension between instructors of various national origins, but she does not present evidence supporting that assertion. Although she points to a 2013 report by the State Department OIG stating that staff in the Near East, Central, and South Asian Languages division that "described . . . pervasive perceptions of favoritism, " that report makes no mention of favoritism based on national origin. [Dkt. # 67-3]. She also points to testimony by an instructor that "favoritism" in the FSI "could be" a result of individuals' national origin. However, the employee was making a speculative, non-specific statement that the favoritism could "be [caused by] origin, it could be religion, it could be things in common, likes and dislikes. We've seen it all." Lakehal-Ayat Dep. at 76:17–77:6 [Dkt. # 67-3]. In addition, defendant points to record evidence showing that the Arabic Section hired a substantial number of direct-hire employees who hailed from North African countries including Morocco, further undercutting the allegation that there was widespread animus at the Arabic Section against employees from North Africa. *See* Def.'s Mem. in Supp. of Summ. J at 19 n. 7 [Dkt. # 64-2].

Furthermore, and more importantly, Massey fails to connect her termination in September 2010 to her national origin, rebutting FSI's proffered legitimate reason. As defendant points out, although Massey alleged that other instructors failed to comply with their duty schedule and were not terminated or disciplined, she has not provided evidence establishing that those individuals were similarly situated such that a reasonable jury could draw a comparison and infer discrimination. *See* Def.'s Mem. in Supp. of Mot. for Summ. J at 17. As a result, her national origin discrimination ultimately boils down to her own

statements alleging that Bohsali made derogatory statements to her about being Moroccan. Massey Decl. ¶ 9 (alleging that Bohsali asked why she could speak Lebanese if she was Moroccan) [Dkt. # 67-5]; *id.* ¶ 11 (alleging that Bohsali yelled at her "who do you think you are Moroccan woman! I am your boss."); *id.* ¶¶ 10, 20 (alleging that Bohsali called her a "[f]at Moroccan" on the day she was terminated). Ultimately, this uncorroborated, self-serving testimony from Massey is insufficient for a jury to conclude that her termination was the result of discrimination as a result of her Moroccan/North African descent.

### 4.   No Jury Could Reasonably Conclude that Her Termination Was Actually the Result of Retaliation for Her Participation in Protected Activity.

On June 11, 2009, Massey provided an affidavit in the EEO investigation of a complaint brought by her coworker Iman Bashrawi against Elrayah. 06/11/09 Massey Decl. [Dkt. # 64-8]. She alleges that her termination in 2010 was a result of her 2009 EEO declaration. However, Massey presents no competent evidence that would allow a jury to reasonably conclude that she was terminated in retaliation for engaging in protected activity. As an initial matter, the 14-month time lapse between her testimony and termination precludes a jury from relying on the temporal proximity between the two events to conclude that there was a causal link between the two events. Our Circuit and the judges of this District have repeatedly held that time lapses of much shorter periods than this were too long to support an inference of retaliation based on temporal proximity. *See, e.g., Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (holding that three-month time lapse was too long to support inference of retaliation); *Greer v. Bd. of Trustees of Univ. of Dist. of Columbia*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) ("When relying on

temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as approaching the outer limit.").

Furthermore, a sizable number of other FSI instructors provided testimony in Bashwari's EEO investigation, including Salah Abdulaziz, Soubhi Al-Khateeb, Ibrahim Al-Mahdi, Haifa Al-Sharbati, Nazi Daher, and Shahda Rawi, but there is no evidence on the record that any of them suffered reprisals or retaliation, and the record in fact shows that all of them were still employed or had voluntarily resigned or retired. *Bashrawi* EEO Index [Dkt. # 64-8]; Deborah Duckett Decl. ¶¶ 1–7 [Dkt. # 64-9].

Massey must present sufficient evidence for a jury to conclude that her supervisors' "desire to retaliate was the but-for cause" of her termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). Given the lapse of 14 months, the number of other EEO witnesses who did not suffer any retaliation, and the record evidence indicating that State legitimately terminated her because she was not complying with the expectations for her duty schedule, a jury could not a reasonably conclude that she was terminated from her position as an Arabic Instructor in retaliation for her EEO testimony 14 months earlier.

### III. Defendant Is Entitled to Summary Judgment on the Discrimination and Retaliations Claims Related to Massey's Non-Selection for New Positions.

As discussed above, Massey applied for two separate direct-hire positions in 2010. In August 2010, she applied for a "GG-11 Arabic Instructor" position. In December 2010, she again applied for a "GG-13 Language Training Supervisor" position. She was not selected for either position, and alleges that her non-selection was the result of discrimination and retaliation. However, defendant has offered as a legitimate reason that

it hired other candidates with comparable or superior educational backgrounds and experience, and Massey has presented no evidence that would permit a jury to conclude that her non-selection was the result of termination or retaliation.

### 1.    Defendant Has Offered Legitimate, Non-Discriminatory Reasons for Selecting Individuals Other Than Massey.

Defendant has offered legitimate, non-discriminatory reasons for why it selected someone other than Massey for both positions.  For the August 2010 CG-11 position, FSI ultimately hired 6 individuals other than Massey, all of whom had experience and educational backgrounds similar to hers. *See* Adlan Abdelaziz Resume (master's degree) [Dkt. # 64-6]; Afrah Zabarah Resume (bachelor's degree) [Dkt. # 64-6]; Dalia Abdelmeguid Resume (bachelor's degree and masters' coursework) [Dkt. # 64-6]; Haydar Elawad Resume (master's degree and doctoral student) [Dkt. # 64-7]; Walid Abu-Ulbah Resume (Ph. D. degree) [Dkt. # 64-7]; Leila Maacha Resume (master's degree) [Dkt. # 64-7].  With respect to the December 2010 CG-13 position, the record shows that defendant extended an interview to Massey, but she declined to attend, and FSI therefore did not select her for the position. 12/16/10 Email to J. Bernhardt [Dkt. # 64-7].  FSI ultimately hired Walid Abu-Ulbah, who had a Ph. D degree. Abu-Ulbah Resume [Dkt. # 64-7].

### 2.    No Jury Could Reasonably Conclude that Her Non-Selection Was the Result of Discrimination or Retaliation.

Massey does not present any evidence that would create a dispute of material fact that would permit a jury to conclude that her non-selection for either of the three openings was discriminatory or retaliatory.  She cannot show that there was a gap between her

qualifications and the selectees' qualifications that was "great enough to be inherently indicative of discrimination"—in fact, the record shows that all of FSI's selectees had comparable credentials and experience to her. *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007). Although she testified that she did not think that some of the instructors were good teachers, she cannot rely on her own subjective assessments of the selectees (and her self-perception of how her qualifications compared to them) to establish discriminatory and retaliatory conduct. *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 131 (D.D.C. 2009) (holding that plaintiff's subjective assessment that she was more qualified than selectees were irrelevant).

## IV.    Defendant is Entitled to Summary Judgment on Massey's Hostile Workplace Environment Claim.

In order to establish a hostile workplace environment claim at trial, Massey must show that the defendant—through her supervisors at the FSI—subjected her to "discriminatory [or retaliatory] intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne,* 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). Her primary evidence in support of a hostile workplace claim is her own self-serving testimony alleging that Bohsali made comments that could be construed as disparaging her as a Moroccan and made statements to her encouraging her to pray with her Muslim colleagues, criticizing her for fasting during Ramadan, and telling her to dress conservatively. These discrete comments from Bohsali, accepted as true, do not establish facts that are so severe or pervasive that they would permit

a jury to determine that she was in an "abusive working environment."  To bolster her argument, she also alleges that her work was disrupted by the prayer practices of her Muslim colleagues, who often prayed in shared workspaces and asked her to leave her office so that they could pray.  Massey Dep. at 69:4-11.  These allegations, accepted as true, would support a finding that her Muslim colleagues' practices were disruptive or perhaps inconsiderate, but they would not show that her colleagues were intimidating, ridiculing, or insulting her because of her religious beliefs.  An individual's practice of his own religion, even if inconvenient to others, is not religious discrimination against another individual.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  An Order consistent with this decision accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge